IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATRICIA STROTHER, | No. CIV S-08-0482-CMK |
| Plaintiff, | |
| vs. | MEMORANDUM OPINION AND ORDER |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |
| _____/ | |

Plaintiff, who is proceeding with retained counsel, brings this action for judicial review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g). Pursuant to the written consent of all parties, this case is before the undersigned as the presiding judge for all purposes, including entry of final judgment. See 28 U.S.C. § 636(c). Pending before the court are plaintiff's motion for summary judgment (Doc. 14) and defendant's cross-motion for summary judgment (Doc. 15).

/ / /

/ / /

/ / /

# I.  PROCEDURAL HISTORY

Plaintiff applied for social security benefits on December 28, 2005.[1]  In the application, plaintiff claims that disability began on January 1, 2002.  In her motion for summary judgment, plaintiff claims that disability is caused by a combination of psychotic disorder, schizophrenia, borderline intellectual functioning, mild psychosocial stressors, mood disorder, personality disorder, major depressive disorder, heart murmur, knee spasms, right knee osteoarthritis, and hypercholesterolemia.  Plaintiff's claim was initially denied.  Following denial of reconsideration, plaintiff requested an administrative hearing, which was held on June 4, 2007, before Administrative Law Judge ("ALJ") Sandra K. Rogers.   In an October 26, 2007, decision, the ALJ concluded that plaintiff is not disabled based on the following relevant findings:

1. Plaintiff has the following severe impairments: mood disorder and personality disorder;

2. Plaintiff's severe impairments do not meet or medically equal any impairment set forth in the Listing of Impairments;

3. Plaintiff retains the residual functional capacity to perform the full range of work at all exertional levels but with the following non-exertional limitations: plaintiff is limited in her ability to respond appropriately to others and should have limited public contact; plaintiff has some limitation in her ability to maintain a schedule and attendance; and plaintiff has some limitation in her ability to respond appropriately to changes in the work setting;

4. Plaintiff maintains sufficient ability to behave appropriately in a vocational setting; and

5. Considering plaintiff's age, education, work experience, residual functional capacity, and in light of testimony from a vocational expert, there are a significant number of jobs which exist in the national economy that plaintiff can perform.

After the Appeals Council declined review on February 5, 2008, this appeal followed.

---

[1] Plaintiff filed numerous prior applications.  The ALJ states that plaintiff was granted benefits in 1992 which ended upon her incarceration at Chowchilla State Prison.  Plaintiff then filed applications on June 12, 2000, and January 13, 2003, both of which were denied at the first level of review.  She filed a fourth application on August 22, 2003, which was also denied on December 23, 2004, after an administrative hearing.  Plaintiff did not seek further review.  Thus, the earliest possible onset date for the current claim is December 24, 2004.

## II. SUMMARY OF THE EVIDENCE

The certified administrative record ("CAR") contains the following evidence, summarized chronologically below:[2]

<u>March 24, 2004</u> – Plaintiff was interviewed at the Parole Outpatient Clinic while serving a period of parole following her release from state prison in May 2003. (CAR 110-12). The report of this interview reflects the following psychiatric history:

> The parolee indicates that she first received mental health services, for depressive related symptoms, in 1998, while in Chowchilla State Prison. She states that she had been unable to eat and sleep properly during that time. She denies any past outpatient treatment while in the community, as well as any past psychiatric hospitalizations. She does, however, reveal one suicide attempt, which she says occurred in 2002, and that it involved her standing on railroad tracks waiting for a train. She denies any history of self-injurious behavior and states that she is not presently receiving any SSI for a mental/psychiatric disability. However, she does indicate that she did receive SSI benefits back in 1997, but her benefits were later discontinued because of her drug related offenses. She states that she is currently taking Lexapro and Seroquel. However, she does indicate that she has taken psychotropic medications in the past, but was unable to recall the names of those medications.

The report also reflects that plaintiff has a long history of drug use. Plaintiff began using marijuana at age 15 and, at age 29, began using cocaine which has been her drug of choice. While plaintiff reported that she had not used drugs since September 2001, much of that time has been spent in prison and is characterized in the report as "institutional remission." On mental status examination, the interviewer diagnosed mood disorder NOS, cocaine dependence, personality disorder NOS, and assigned a global assessment of functioning ("GAF") score of 55 on a 100-point scale.

/ / /

/ / /

---

[2] As discussed below, the only issues plaintiff raises in this case relate to mental impairments. Thus, the court will only summarize those records relating to plaintiff's mental condition.

February 17, 2006 – Psychologist James Wakefield, Ph.D., performed a psychological evaluation for the Department of Social Services Disability and Adult Programs. (CAR 113-18). As to daily activities, plaintiff reported: "I do nothing. I sit on the couch counting my bunnies." She told the doctor she goes to church sometimes, but does not cook. She stated that she was afraid to go outside. Dr. Wakefield performed a variety of tests and concluded that plaintiff's verbal IQ was 70, her performance IQ was 69, and her full-scale IQ was 68. The doctor diagnosed undifferentiated schizophrenia and borderline intellectual functioning and assigned a GAF score of 55. Dr. Wakefield provided the following summary of his conclusions:

> This 46-year-old female exhibits characteristics of a schizophrenic disorder. She appears to be experiencing both auditory and visual hallucinations as well as a severe sleep disorder. She is uncomfortable around people. She appears to have been befriended by a member of the church, but she generally has difficulty formulating social relationships. She is currently taking the prescribed medications Lexapro and Seroquel. Patricia appears to have borderline potential, but her current reasoning and problem-solving skills were appraised to fall within the mildly mentally retarded range. She was not able to maintain focus and concentration enough to complete the simple Part A of the Trail Making Test. Her performance on the Bender Visual-Motor Gestalt Test contained a significant number of emotional indicators. She will undoubtedly require ongoing intervention to address her impairments in emotional functioning. She is not capable of handling benefit payments in her own interests.

March 29, 2006 – Agency examining doctor Philip Seu, M.D., performed a comprehensive internal medicine examination. (CAR 119-21). He noted that plaintiff has "potential workplace limitations due to the claimant's psychiatric disorder and fear of being around other people." It is noted, however, that Dr. Seu is not a mental health professional and was contacted to perform a physical evaluation.

May 20, 2006 – Agency consultative psychiatrist V.M. Meenakshi, M.D., submitted a mental residual functional capacity assessment with psychiatric review technique form. (CAR 122-39). As indicated on the psychiatric review technique form, overall Dr. Meenakshi opined that plaintiff has an organic mental disorder which does not precisely satisfy

4

the diagnostic criteria set forth in the regulations.  The doctor stated that plaintiff has no restrictions in activities of daily living, but moderate limitations with respect to maintaining social functioning, as well as maintaining concentration, persistence, and pace.  The evidence did not establish any episodes of decompensation.  Dr. Meenakshi did not feel that the evidence established the presence of the "C criteria."[3]  Dr. Meenakshi added the following under "Consultant's Notes":

> 5/20/06 – revd, cl is not in rx, parole outpt in 3/04 dxed her as mood dis, cocain dep and pers dis.  current ce states schizo: there is no evidence for this dx.  has borderline with similar iq capable of simple tasks.  vm meenakshi m.d.

On the mental residual functional capacity assessment form, Dr. Meenakshi opined that plaintiff was moderately limited in the following areas: (1) ability to understand, remember, and carry out detailed instructions; (2) ability to perform activities within a schedule, maintain regular attendance, and be punctual; (3) ability to work in coordination with or in proximity to others without being distracted by them; (4) ability to interact appropriately with the general public; (5) ability to accept instructions and respond appropriately to criticism from supervisors; and (6) ability to respond appropriately to changes in the work setting.  In all other areas, the doctor found no significant limitation.  As for a functional capacity assessment, the doctor opined that plaintiff "has the ability to perform simple tasks."

/ / /

/ / /

---

[3] Under the Listing of Impairments, this refers to medically documented history of a chronic organic mental, schizophrenic, or affective disorder of at least two years' duration that has caused more than a minimal limitation of ability to do any basic work activity, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following: (1) repeated episodes of decompensation of extended duration; (2) a residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause decompensation; or (3) a current history of one or more years' inability to function outside a highly supportive living arrangement with an indication of continued need for such an arrangement.

<u>August 29, 2006</u> – A "Screening/Crisis Contact Sheet" was completed incident to plaintiff's treatment at San Joaquin County Mental Health Services. (CAR 142-43). On mental status evaluation, it was noted that plaintiff did not report any auditory or visual hallucinations, but stated that she hears voices if she does not take her medications. Plaintiff reported poor sleep with depression and "mood swings." She reported that she was living with her husband. Plaintiff denied any alcohol or drug use. The evaluator assigned a GAF score of 52.

<u>September 14, 2006</u> – Plaintiff reported to a counselor at San Joaquin County Mental Health that "she thinks the medications are working for her." Plaintiff reported that she was sleeping well and that she felt good.

<u>October 12, 2005</u> – A social worker at San Joaquin County Mental Health Services completed a progress note. (CAR 164). Plaintiff reported that she was sleeping better, but does not "do anything." Plaintiff told the counselor that she "does not like people" and has "no goal to improve her daily functioning." Plaintiff had applied for social security benefits two weeks prior and was waiting for a decision.

<u>October 25, 2006</u> – A progress note from San Joaquin County Mental Health Services indicates "no improvement." (CAR 161). It appears that, by this time, plaintiff was taking Zoloft and Trazadone and that dosages were increased at this visit.

<u>November 27, 2006</u> – A further progress note from San Joaquin County Mental Health indicates that plaintiff was sleeping better and plaintiff had "no expressed delusions." (CAR 161). Her existing regimen was continued.

<u>December 12, 2006</u> – A progress note from San Joaquin County Mental Health Services indicates a GAF score of 50. (CAR 162).

<u>December 21, 2006</u> – The record contains a progress note from a licensed clinical social worker at San Joaquin County Mental Health Services. (CAR 159). The social worker indicated that plaintiff's depression was worse and that she was anxious and discouraged.

/ / /

<u>February 14, 2007</u> – A "Screening/Crisis Contact Sheet" from San Joaquin County Mental Heath Services indicates a current GAF of 56. (CAR 157).

<u>February 22, 2007</u> – A progress note from San Joaquin County Mental Health Services indicates that plaintiff reported that Trazadone did not help her and that she wanted a medication that would give her more energy. (CAR 227). The counselor's impression was that plaintiff had a schizoaffective disorder.

<u>March 14, 2007</u> – A psychiatrist at San Joaquin County Mental Health Services completed an assessment of plaintiff. (CAR 219-21). Plaintiff complained of being "stressed out" and of occasional increased irritability. On mental status examination, the doctor noted that plaintiff was "casually depressed, mildly anxious, yet cooperative." He also stated that, while plaintiff had a depressed mood, her affect was broad and appropriate. The doctor assigned a GAF score of 60. Plaintiff's dosage of Seroquel was reduced and she was scheduled for a follow-up visit.

### III. STANDARD OF REVIEW

The court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole. See <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1097 (9th Cir. 1999). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. See <u>Saelee v. Chater</u>, 94 F.3d 520, 521 (9th Cir. 1996). It is ". . . such evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 402 (1971). The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed. See <u>Howard v. Heckler</u>, 782 F.2d 1484, 1487 (9th Cir. 1986); <u>Jones v. Heckler</u>, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence. See <u>Hammock v. Bowen</u>, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative

findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive.  See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

## IV.  DISCUSSION

Plaintiff raises one argument: "The ALJ failed to properly submit to the vocational expert limitations found by the state agency medical consultant."  Specifically, plaintiff argues that, on the one hand, the ALJ's residual functional capacity assessment adopted the limitations found by agency consultative psychiatrist Dr. Meenakshi but, on the other hand, qualified these limitations by concluding that plaintiff "retains sufficient ability to behave appropriately in a vocational setting."  Plaintiff concludes that this was improper because the ALJ failed to provide any analysis for adding this qualification and, in doing so, ignored specific limitations opined by Dr. Meenakshi.  Plaintiff also contends that the ALJ compounded this error by posing hypothetical questions to the vocational expert which contained the inappropriate qualification and omitted specific limitations in plaintiff's ability to accept instructions and respond to criticism from supervisors, as well as deal appropriately to changes in the work setting.

Plaintiff's argument has two components.  First, she contends that the ALJ erred in stating plaintiff's residual functional capacity because the ALJ ignored several specific limitations opined by Dr. Meenakshi and provided no reasons for doing so.  Second, plaintiff contends that the ALJ erred by submitting hypothetical questions to the vocational expert based on a flawed residual functional capacity finding.

A.      **Residual Functional Capacity Assessment**

Residual functional capacity is what a person "can still do despite [the individual's] limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a) (2003); see also Valencia v. Heckler, 751 F.2d 1082, 1085 (9th Cir. 1985) (residual functional capacity reflects current "physical and mental capabilities"). Thus, residual functional capacity describes a person's exertional capabilities in light of his or her limitations.[4] In determining residual functional capacity, the ALJ must assess what the plaintiff can still do in light of both physical and mental limitations. See 20 C.F.R. §§ 404.1545(a), 416.945(a) (2003); see also Valencia v. Heckler, 751 F.2d 1082, 1085 (9th Cir. 1985) (residual functional capacity reflects current "physical and mental capabilities"). Where there is a colorable claim of mental impairment, the regulations require the ALJ to follow a special procedure. See 20 C.F.R. §§ 404.1520a(a), 416.920a(a). The ALJ is required to record pertinent findings and rate the degree of functional loss. See 20 C.F.R. §§ 404.1520a(b), 416.920a(b).

As to the ALJ's residual functional capacity assessment, plaintiff argues:

> In the May, 20, 2006 Mental Residual Functional Capacity ("RFC") Assessment, MC [medical consultant] Meenakshi opined that Plaintiff would experience moderate limitation in the ability to understand, remember, and carry out detailed instructions; moderate limitation in the ability to perform activities within a regular schedule, to maintain regular attendance and to be punctual with customary tolerances, and to work in coordination with or proximity to others without being a distraction. CT

---

[4] Exertional capabilities are the primary strength activities of sitting, standing, walking, lifting, carrying, pushing, or pulling and are generally defined in terms of ability to perform sedentary, light, medium, heavy, or very heavy work. See 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(a). "Sedentary work" involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. See 20 C.F.R. §§ 404.1567(a) and 416.967(a). "Light work" involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. See 20 C.F.R. §§ 404.1567(b) and 416.967(b). "Medium work" involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. See 20 C.F.R. §§ 404.1567(c) and 416.967(c). "Heavy work" involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. See 20 C.F.R. §§ 404.1567(d) and 416.967(d). "Very heavy work" involves lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more. See 20 C.F.R. §§ 404.1567(e) and 416.967(e).

> 136. The MC also opined that Plaintiff would be moderately limited in the ability to interact appropriately with the general public, to accept instructions and to respond appropriately to criticism from supervisors, and to respond appropriately to changes in work settings. CT 137.
>
> The ALJ imposed the following RFC: "The claimant retains the ability to understand, remember and carry out simple job instructions. She is limited in the ability to respond to others and should have limited public contact. The claimant has some limitation in maintaining a schedule or attendance and responding appropriately to changes in the work setting *but retains sufficient ability to behave appropriately in a vocational setting*." (Emphasis added). CT 22- 23. Most of these limitations are derived from MC Meenakshi's May 20, 2006 Mental RFC Assessment. CT 137-138. Thus, on the one hand, the ALJ adopted the limitations imposed by the MC. But on the other, the ALJ qualified the MC's limitations with the phrase "but retains sufficient ability to behave appropriately in a vocational setting." By including this statement in the RFC finding, the ALJ has negated all of the MC's limitations except for the limitation with regard to simple job instructions. This was inappropriate since the ALJ failed to provide any reason to discredit the MC's findings. SSR 96-6p.
>
> * * *
>
> Although the MC found that Plaintiff could perform simple tasks, and that Plaintiff had difficulty interacting (CT 138), the MC also found that Plaintiff was moderately limited in accepting instructions and responding appropriately to criticism from supervisors and moderately limited in the ability to respond appropriately to changes in the work setting. CT 137-138.

The essence of plaintiff's argument is that the ALJ improperly rejected a portion of Dr. Meenakshi's assessment because no reason was provided for stating that plaintiff "retains sufficient ability to behave appropriate in a vocational setting." According to plaintiff, this additional phrase negated Dr. Meenakshi's opinion that plaintiff is moderately limited in her ability to: (1) accept instructions and respond to criticism from supervisors; and (2) respond appropriate to changes in the work setting.

The court's analysis must begin with the ALJ's residual functional capacity assessment. As to plaintiff's residual functional capacity, the ALJ stated:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: The claimant retains the ability to understand, remember, and carry out simple job instructions. She is limited in the ability to respond

>appropriately to others and should have limited public contact.  The claimant has some limitation in maintaining a schedule or attendance and responding appropriately to changes in the work setting but retains sufficient ability to behave appropriately in a vocational setting.

At the outset, the court notes that the ALJ specifically determined and stated in her residual functional capacity assessment that plaintiff has difficulty responding to changes in the work setting.  This is consistent with Dr. Meenakshi's opinion.  Plaintiff's argument that the ALJ's functional capacity assessment somehow ignored this restriction is unavailing.

Turning to plaintiff's argument that the ALJ improperly ignored Dr. Meenakshi's opinion that plaintiff was moderately limited in her ability to accept instructions from supervisors and respond to criticism from supervisors, it appears that the ALJ determined that, while these limitations were moderate, they did not erode plaintiff's "ability to behave appropriately in a vocational setting."  The court does not agree with plaintiff that the ALJ erred.  Nowhere did Dr. Meenakshi opine that plaintiff was disabled due to mental impairments.  Dr. Meenakshi clearly opined that, notwithstanding plaintiff's limitations, she is capable of performing simple tasks.  In reaching this conclusion, and contrasting it with Dr. Meenakshi's opinion that plaintiff is unable to perform detailed or complex tasks, the court finds that Dr. Meenakshi believed that plaintiff is capable of performing work involving simple, but not complex or detailed, tasks and/or instructions.  This is completely consistent with the ALJ's residual functional capacity assessment.

Because Dr. Meenakshi's ultimate opinion with respect to plaintiff's functional capacity was that plaintiff is capable of work involving simple tasks, the ALJ was not required to recite each and every non-significant limitation which formed the basis of that ultimate opinion. See e.g. Howard v. Astrue, 2008 WL 438426, at *2 (C.D. Cal. Sept. 4, 2008) (concluding that a finding of moderate restriction in the ability to respond appropriately to work pressures in a usual work setting is "encompassed by the ALJ's restriction to simple, repetitive work. . . ."); see also e.g. Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1174 (9th Cir. 2008) (holding that an ALJ's

hypothetical including the ability to perform simple, routine, repetitive tasks adequately captured a claimant's deficiencies in concentration, persistence, or pace where the state psychologists still opined that the claimant could perform at least simple, repetitive, and routine cognitive activity without a severe restriction of function); Johnson v. Astrue, 2008 WL 8503120, at *4 (E.D. Cal. March 28, 2008) (concluding that the ALJ properly relied on the agency doctor's opinion that the plaintiff could perform simple, repetitive tasks despite his specific mental limitations and impairments). As plaintiff observes, the vocational expert stated that a moderate limitation does not preclude work function. Rather, as the vocational expert and ALJ agreed, a moderate limitation means "difficulties but able to perform."

For these reasons, the court finds that the ALJ's omission of the specific moderate limitation in plaintiff's ability to accept instructions from supervisors and respond to criticism from supervisors from her functional capacity assessment is not inconsistent with the ALJ's statement that plaintiff retains the ability to behave appropriately in a work setting. The ALJ's residual functional capacity assessment is accurate and supported by substantial evidence.

### B.     Hypothetical Question

Hypothetical questions posed to a vocational expert must set out all the substantial, supported limitations and restrictions of the particular claimant. See Magallanes v. Bowen, 881 F.2d 747, 756 (9th Cir. 1989). If a hypothetical does not reflect all the claimant's limitations, the expert's testimony as to jobs in the national economy the claimant can perform has no evidentiary value. See DeLorme v. Sullivan, 924 F.2d 841, 850 (9th Cir. 1991). While the ALJ may pose to the expert a range of hypothetical questions based on alternate interpretations of the evidence, the hypothetical that ultimately serves as the basis for the ALJ's determination must be supported by substantial evidence in the record as a whole. See Embrey v. Bowen, 849 F.2d 418, 422-23 (9th Cir. 1988).

/ / /

/ / /

1    Plaintiff argues that the ALJ erred by not including the specific moderate
2 limitation in plaintiff's ability to accept instructions from supervisors and respond to criticism
3 from supervisors in hypothetical questions posed to the vocational expert.[5]  It follows that, even
4 if the ALJ somehow erred in not including this specific limitation in her residual functional
5 capacity assessment, plaintiff would not be entitled to any relief if that limitation was nonetheless
6 included in hypothetical questions.
7    A review of the hearing transcript reflects that the following exchange took place
8 between the ALJ and vocational expert:

> Q:    Mr. Dettmer, if we assume a person of the same age, education, and work experience as the Claimant and if we were to assume, as it set forth in Exhibit B-5F [Dr. Meenakshi's mental residual functional capacity assessment], that the person is moderately limited in the ability to understand and remember detailed instructions or carry out detailed instructions, moderately limited in the ability to perform activities within a schedule, maintain regular attendance and be punctual, and the ability to work in coordination with or proximity to others without being distracted by them, the ability to interact appropriately with the general public, *and the ability to accept instructions and respond appropriately to criticism* but has the ability to perform simple tasks, . . . would there be jobs existing in the national or regional economies such a person could perform? (emphasis added)
>
> A:    Moderately limited usually means difficulties but able to perform as I understand it.
>
> Q:    Well, that's usually the definition that I've seen.
>
> A:    Yes. . . .

Plaintiff is simply incorrect in arguing that a particular restriction mentioned by Dr. Meenakshi
"should have been properly included in the ALJ's hypothetical to the VE" because each and
every restriction was part of the hypothetical question posed by the ALJ and upon which the
vocational expert based his opinion.

/ / /

---

[5]    Plaintiff does not argue that any other limitation was omitted.

13

## V.  CONCLUSION

Based on the foregoing, the court concludes that the Commissioner's final decision is based on substantial evidence and proper legal analysis.  Accordingly, IT IS HEREBY ORDERED that:

    1.    Plaintiff's motion for summary judgment (Doc. 14) is denied;

    2.    Defendant's cross-motion for summary judgment (Doc. 15) is granted; and

    3.    The Clerk of the Court is directed to enter judgment and close this file.

DATED: September 25, 2009

                                                                                        **CRAIG M. KELLISON**
                                                                                         UNITED STATES MAGISTRATE JUDGE